THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* THE EQUITABLE TRUST COMPANY OF NEW LONDON, CONNECTICUT, Appellant.

The act providing for raising taxes " for the use of the State upon certain corporations," etc. (Chap. 542, Laws of 1880, amended by chap. 361, Laws of 1881), so far as it relates to foreign corporations, simply imposes a tax upon the business of such corporations done within the State. So far as the act imposes a tax upon corporate franchises, its operation is confined to domestic corporations.

Such a tax upon foreign corporations the legislature has authority to impose, and the mode of taxation prescribed is not unconstitutional.

As the tax is a specific one no apportionment or appraisal is required.

*It seems* that a foreign corporation may not be taxed here either on account of its property situated out of the State, its business done elsewhere, or its corporate franchises.

The said act does not authorize the apportioning of the tax upon a foreign corporation, according to the amount of dividends earned or of capital employed in this State, but the tax must be imposed as prescribed by the act,

if the corporation is doing business in the State, without regard to the extent of that business.

*Quære*, as to whether a foreign corporation can be considered as doing business in the State within the meaning of the act, where it keeps an office in this State simply for the record and transfer of its stock, or from which its officers give directions, while the business for which it is chartered is done elsewhere.

(Argued April 14, 1884; decided October 7, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made January 23, 1883, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial, without a jury.

The nature of the action and the material facts are stated in the opinion.

*Thomas Thacher, Julien T. Davies* and *Edward Lyman Short* for appellant. Laws 1881, chapter 361, is enacted under the taxing power, and its purpose is revenue. It is not a license law enacted under police power. (*People, ex rel. Ins. Co.*, v. *Davenport*, 91 N. Y. 585 ; *People* v. *Home Co.*, 92 id. 339 ; *People* v. *Gold Co.*, id. 386; *People* v. *Fire Association*, id. 311 ; Cooley on Taxation, 407 ; Burroughs on Taxation, § 48 ; *Mayor* v *Charlton*, 36 Ga. 462 ; *Home Co.* v. *Augusta*, 50 id. 537 ; *Erie Ry. Co.* v. *State*, 31 N. J. L. 543 ; *Van Hook* v. *Selma*, 70 Ala. 361 ; *Phœnix Co.* v. *Welch*, 12 Ins. L. J. 502 ; *Comm.* v. *Mining Co.*, 13 W. N. C. 522 ; *County of San Mateo* v. *R. R. Co.*, 8 Sawyer, 278, 304 ; *County of Santa Clara* v. *So. Pac. R. R. Co.*, 18 Fed. Rep. 438, 439, 440 ; 13 id. 779 ; 8 Sawyer, 308.) A State can alter the rules of comity only by positive provisions. (*Cowell* v. *Springs Co.*, 100 N. Y. 55 ; *Christian Union* v. *Yount*, 101 id. 352 ; *Ins. Co.* v. *Morse*, 20 Wall. 445 ; Story on Conflict of Laws, § 38 ; *Merrick* v. *Van Santvoord*, 34 N. Y. 208 ; *State* v. *Tel. Co.*, 73 Me. 518 ; *Mayor* v. *Second Ave. R. R. Co.*, 32 N. Y. 261 ; *City of St. Louis* v. *Speigel*, 75 Mo. 145.) The legislature cannot take money or property from a foreign

corporation already doing business here by an absolute and unconditional demand. (*Doyle* v. *Continental Ins. Co.*, 4 Otto, 535; *People* v. *Fire Ins. Co.*, 92 N. Y. 311; 8 Sawyer, 278, 306; 18 Fed. Rep. 440.) The tax has not become binding by any assent. (92 N. Y. 311; 18 Fed. Rep. 438.) The law is invalid, because it seeks to tax what is beyond the jurisdiction. (*U. S.* v. *Ry. Co.*, 106 N. Y. 334; 4 Wheat. 430; 15 Wall. 300; *St. Louis* v. *Ferry Co.*, 11 id. 423; *Tappen* v. *Bank*, 19 id. 490; *Delaware R. R. Tax Case*, 18 id. 229; *Hoyt* v. *Sprague*, 103 U. S. 630; *State Treas.* v. *Auditor-Genl.*, 46 Mich. 231.) The corporate franchise is not taxable by the State. (*Plimpton* v. *Bigelow*, 93 N. Y. 602; *Comm.* v. *Standard Co.*, 12 W. N. C. 296; *State of Indiana* v. *Pullman Co.*, 16 Fed. Rep. 193.) There is no reasonable rule of apportionment. (*Haight* v. *Day*, 1 Johns. Ch. 18; *Meads* v. *Walker*, 1 Hopk. 591; *Clarke* v. *Brooklyn*, 1 Edw. 366; *Le Roy* v. *Mayor*, 4 Johns. Ch. 352; *Stewart* v. *Palmer*, 74 N. Y. 183; *People* v. *Commissioners*, 76 id. 71; *People* v. *Salem*, 20 Mich. 452; *Gordon* v. *Carnes*, 47 N. Y. 608; *County of Santa Clara* v. *So. Pac. Ry. Co.*, 18 Fed. Rep. 423; *Dobbs* v. *State*, 39 Ark. 355; *Baldwin* v. *Mayor*, 2 Keyes, 396; Cooley's Const. Lim. 603; Cooley on Taxation, § 26; *Loan Association* v. *Topeka*, 20 Wall. 655.) The classification is unreasonable. (13 Fed. Rep. 737; 8 Sawyer, 256; 18 Fed. Rep. 385, 396, 406–410.) The defendant is denied the equal protection of the laws. (13 Fed. Rep. 722; 8 Sawyer, 302; 18 Fed. Rep. 385; 92 N. Y. 328; *Comm.* v. *Con. Mining Co.*, 13 W. N. C. 523; *Memphis Gas Co.* v. *Fenn*, 109 U. S. 400. See *Plimpton* v. *Bigelow*, 93 N. Y. 592.) Conditions upon foreign corporations must be reasonable, and not an attempt to extend jurisdiction of State. (*Ins. Co.* v. *French*, 18 How. 407; *Ins. Co.* v. *Morse*, 20 Wall. 457; *Doyle* v. *Cont. Co.*, 94 U. S. 540.) Taxation elsewhere is to be considered. (*People* v. *Comm.*, 35 N. Y. 442; 4 Hun, 597; *Kimball* v. *Milford*, 59 N. H. 416.) The form of the report made by defendant is no objection to apportionment. (*C. & N. W. Ry. Co.* v. *Auditor*, 18 N. W. Rep. 586.) The theory of protection obtains in

New York. (91 N. Y. 589 ; 47 id. 611 ; 20 Barb. 318. See, also, 19 Kans. 414.) The policy of New York is against so-called extra-territorial taxation. (*People, ex rel. Bay State Co.,* v. *McLean,* 17 Hun, 206 ; 80 N. Y. 259 ; *People, ex rel. Parker Mills,* v. *Comm.,* 59 ,id. 40 ; *Hoyt* v. *Comm.,* 23 id. 224; *People* v. *P. M. S. S. Co.,* 5 Hun, 200 ; 64 N. Y. 541 ; *People, ex rel. Tel. Co.,* v. *Comm.,* 18 W..D. 384.) The New York legislature must be held to have adopted, as to the Pennsylvania statutes, the construction there given to them. (*Comm.* v. *Hartnett,* 69 Mass. 451 ; *Thornton* v. *Wood,* 59 Mo. 380 ; *Spraiker* v. *Allen,* 76 Me. 369.) The operation of the statute is to be confined within the State regardless of its express language. (*Ohio & W. R. R. Co.* v. *Weber,* 96 Ill. 443 ; *State Treas.* v. *Auditor,* 46 Mich. 226.)

*Denis O'Brien,* attorney-general, for respondent. The intention of the act of 1880 (Chap. 542) was to subject foreign corporations to a tax as a consideration for the right to do business in this State. (*People* v. *F. Assn., Phila.,* 92 N. Y. 311 ; *People* v. *Home Ins. Co.,* id. 328.) It is within the scope of legislative power to impose upon foreign corporations a tax as the price of the privilege of doing business within the State. (*Liverpool Ins. Co.* v. *Mass.,* 10 Wall. 566 ; *B'k of Augusta* v. *Earl,* 13 Peters, 581 ; *Paul* v. *Virginia,* 8 Wall. 168 ; *People* v. *Fire Assn., Phila.,* 92 N. Y. 311, 325.) The State is neither bound by silent acquiescence, nor gratuitous concession. (*People, ex rel. Davies,* v. *Comm'rs of Taxes,* 47 N. Y 501.) The State has not only the power to prevent foreign corporations from coming into its jurisdiction, but also the power to drive them therefrom after they have come in. (*Doyle* v. *Continental Ins. Co.,* 4 Otto, 535, 540, 541, 542 ; *People* v. *Home Ins. Co.,* 92 N. Y. 328, 346, 347; *People* v. *F. Assn. of Phila.,* id. 327.) The tax directed by the statute is not an impost upon property outside the jurisdiction of the State. (*People* v. *Home Ins. Co.,* 92 N. Y. 328.)

EARL, J. This action was brought by the attorney-general against the defendant, a foreign corporation, to recover the

sum of $1,575, which, it is claimed, the defendant should have paid into the treasury of the State within fifteen days from January 1, 1882, under section 2 of the act chapter 542 of the Laws of 1880, as amended by chapter 361 of the Laws of 1881.

The defendant is a Connecticut corporation, and for many years did business through its officers in that State. Its business was the negotiating of loans on mortgages in the western States, or the purchase of obligations secured by mortgages in those States, and the selling of securities based on those loans and obligations. But during the year ending November 1, 1881, it did but little business and made but few loans, being engaged in caring for its old business of previous years, and looking after its real estate. During that time its sales of securities were very light, and were mostly made in foreign countries. During eight years prior to the commencement of this action, it had an office for the transaction of business in the city of New York; but a very small portion of its property was within this State, and but little of its business was done here. On the 10th day of November, 1881, under protest, its treasurer made a report in writing to the comptroller of this State, showing that during the year ending November 1, it had not made or declared any dividends upon its capital stock, and its secretary and treasurer also sent to the comptroller an appraisal of its capital stock as required by the act above referred to, showing that the actual cash value thereof was $1,050,000. A tax upon this sum at the rate of one and one-half mills upon each dollar amounts to the sum which this action is brought to recover.

The main contention on the part of the defendant is that there is no constitutional authority for imposing the tax or enforcing its collection. It is, therefore, important first to determine the meaning of the act so far as it bears upon this case.

The act is entitled "An act to provide for raising taxes for the use of the State upon certain corporations, joint-stock companies and associations." Section 1 provides for the report

as to dividends, and the appraisal of the capital stock of cor-
porations in cases where no dividends have been declared or
the dividends have been less than six per centum. Section
3, so far as it is now important, is as follows: "Every cor-
poration, joint-stock company or association whatever, now or
hereafter incorporated or organized under any law of this State,
or now or hereafter incorporated or organized by or under the
laws of any other State or country, and doing business in this
State, except savings banks and institutions for savings, life in-
surance companies, banks and foreign insurance companies, and
manufacturing corporations carrying on manufactures within
this State, which exceptions shall not be taken to include gas com-
panies or trust companies, shall be subject to and pay a tax, as
a tax upon its corporate franchise or business, into the treasury
of the State annually, to be computed as follows: If the divi-
dend or dividends made or declared by such corporation, joint-
stock company or association, during any year ending with the
first day of November, amount to six or more than six per
centum upon the par value of its capital stock, then the tax
to be at the rate of one-quarter mill upon the capital stock for
each one per centum of dividends so made or declared; or if
no dividend be made or declared, or if the dividend or divi-
dends made or declared do not amount to six per centum upon
the par value of said capital stock, then the tax to be at the
rate of one and one-half mills upon each dollar of valuation
of the said capital stock made in accordance with the provis-
ions of the first section of this act." Section 8 provides
that the corporations, joint-stock companies and associations
mentioned in the act, as taxable, shall be exempt from assess-
ment and taxation for State purposes, except upon their real
estate and as in the act provided, but that they shall in all
other respects be liable to assessment and taxation as they had
before been; and section 9 provides that the taxes imposed
by the act, and the revenue derived therefrom shall be appli-
cable to the payment of the ordinary and current expenses of
the State, and that the amount of the tax, if not paid, may be
recovered in the name of the people by action.

The power of taxation possessed by the State is a very broad and comprehensive one, and may, with some exceptions imposed by the Federal Constitution and laws passed in pursuance thereof, be exercised upon all objects within its jurisdiction. Persons and property within the State, and trades, avocations and other business carried on within the State, under the protection of its laws, whether by citizens or non-residents, may be taxed. But non-residents, property having no legal *situs* here, and business not carried on here, are beyond the jurisdiction of our State and are not the subjects of taxation here. (*State Tax on Foreign Held Bonds*, 15 Wall. 300.) So far the counsel on both sides agree. The defendant, being a foreign corporation, could not be taxed here in reference to its property situate out of this State, and its business not done here. Nor could it be taxed on account of its corporate franchise, as that was not given by our laws, was dependent upon the laws of the State of its creation, and had no existence separate therefrom. A corporation may, through its agents, extend its operations into other States, and thus, metaphorically speaking, go there; but it never really travels, and its franchises exist only at the place of its domicile and residence. (*Plimpton* v. *Bigelow*, 93 N. Y. 592.)

So far as section 3 imposes a tax upon corporate franchises its operation must, therefore, be confined to corporations created under our laws; and as to foreign corporations the tax is imposed solely upon business. The counsel for the appellant, however, claims that the tax is imposed upon all the business of such corporations, whether done in this State or elsewhere, and hence that this tax upon the business of this corporation mostly done without the State, was wholly unauthorized. If the proper construction of this act requires us to hold that this tax was imposed upon all the business of this corporation it is, as I understand, conceded by the attorney-general that the tax cannot be enforced. We are of opinion that this was a tax imposed upon the business of this corporation done within this State. Unless the plain reading of a statute requires it, we should not so construe it as to bring it into conflict with the

State or Federal Constitution, or to hold that the legislature meant in any way to transcend its power. We should not lightly attribute to the legislature an intention which will nullify its act rather than one which will sustain it. *Verba ita sunt intelligenda, ut res magis valeat quam pereat* is a maxim quite applicable here. In judging of the acts of men it is said to be a natural presumption that the actors intended to do that which they had the right and power to do rather than that which was beyond their right and power; and the same presumption should be indulged in reference to legislative acts. In *People* v. *Home Insurance Company* (92 N. Y. 328), RUGER, Ch. J., said in reference to a portion of this same act then under consideration, that "the rule of construction claimed is that we should impute to the legislature an unlawful intent in a case where its action is plainly sustainable upon justifiable grounds. Well and long-settled rules forbid us from placing such an interpretation upon statutory enactments, and require us to make every reasonable intendment to uphold rather than nullify the exercise of legislative authority."

The legislature was dealing with the subject of taxing foreign corporations doing business in this State, and taxing them only because they did business in this State, and having the right to tax them only upon business done in this State. Under such circumstances, applying the rules above stated, if there was nothing else in the statute to throw light upon the legislative intent, we would be obliged to hold that the word "business" had reference to business done within this State. But other parts of the statute make this plain. In the earlier part of the section the words "doing business in this State" are used, and when the word "business" is used later it has reference to the same business which was then in the legislative mind. Then the whole framework of the act shows that the legislature was conscious of the limitations upon its powers. Foreign insurance companies, and railroad and other transportation companies, were made liable to pay a tax, in plain terms, only upon business done in this State. It cannot be supposed that

the legislature meant to tax some foreign corporations doing business in this State upon all their business done anywhere, and tax others only upon their business done in this State. There can be no reason for such discrimination, and it clearly was not intended.

Holding, then, that this was a tax only upon the business done in this State, what objection can there be to it?

The courts are quite reluctant to place limits to the power of taxation possessed by a sovereign State. The legislature may exercise it upon all objects within its jurisdiction which it concludes should bear a portion of the public burdens. The imposition may be a general property tax to be apportioned upon all the property within the State according to appraised values; it may be a poll tax imposed upon all the citizens of the State, or taxes may be specific imposed upon specified articles of personal property, or upon avocations, trades and business. In *McCulloch* v. *Maryland* (4 Wheat. 428, 430), Chief Justice MARSHALL said : " The power of taxing the people and their property is essential to the very existence of government, and may be legitimately exercised on the objects to which it is applicable, to the utmost extent to which the government may choose to carry it. The only security against the abuse of this power is found in the structure of the government itself," and that it is " unfit for the judicial department to inquire what degree of taxation is the legitimate one and what degree may amount to the abuse of the power." In another case (*Providence Bank* v. *Billings*, 4 Peters, 561) the same learned judge said : " This vital power may be abused, but the interest, wisdom and justice of the representative body, and its relations with its constituents, furnish the only security against unjust and excessive taxation, as well as against unwise taxation."

While the taxing power is thus supreme, yet it may be so exercised as to transcend constitutional restraints, and to invade rights protected by constitutional guarantees. If, under the guise of taxation, the legislature should attempt to make exactions purely arbitrary, without any apportionment or appraisal, founded upon no rule of equity or justice, its act might be con-

demned as depriving the owner of his property without due process of law and without just compensation. (*Gordon* v. *Cornes*, 47 N. Y. 608 ; *Stuart* v. *Palmer*, 74 id. 183 ; *People, ex rel. D. & H. R. R. Co.*, v. *Salem*, 20 Mich. 452.) Judge Cooley, in his work on Constitutional Limitations, at page 607, says : " Every thing that may be done under the name of taxation is not necessarily a tax, and it may happen that an oppressive burden imposed by the government, when it comes to be carefully scrutinized, will prove, instead of a tax, to be an unlawful confiscation of property, unwarranted by any principle of constitutional government."

This tax upon the business of foreign corporations done in this State is a specific tax, and hence no apportionment or appraisal was required. Such a mode of taxation has been resorted to by all governments. It was extensively used by the Federal Government during the late war and at other periods of its history. A poll tax is specific, and the legislature can constitutionally impose the same poll tax upon every citizen without reference to his ability to pay. So it can impose a tax upon all watches, carriages, pianos, dogs, spirituous liquors and other chattels without reference to their value. On the same principle it can impose an arbitrary tax upon any avocation or business without estimating its volume or value. It may impose a specific tax upon any saloon keeper or hotel keeper or banker or broker or trader. And for these views, sustained by the history of all governments, if any authority is needed, it is found in the case of *People, ex rel. Griffin*, v. *Mayor, etc., of Brooklyn* (4 N. Y. 419). Such taxes are generally arbitrary, unjust and unequal, and have been usually resorted to for revenue by governments in great financial straits. While they are free from constitutional objections, unless imposed *pro bono publico*, to restrain, suppress or regulate some obnoxious trade or business, they must generally receive the condemnation of a wise and enlightened statesmanship.

The legislature, therefore, had the power to impose an arbitrary sum as a tax upon the business of all corporations done within the State ; and no harm is done because this act appor-

tions the tax, at least, according to the ability of the corporations to pay.

The principle upon which this tax can be imposed, as a tax upon business, was really involved in the case of *People* v. *Home Insurance Company* (92 N. Y. 328). In that case the tax was upon a domestic corporation under this same act, and it was upheld as a tax upon a franchise. The law imposes the tax upon the franchise or business of the corporation. It might have been imposed solely upon business, and then the tax in that case would have been upon the business of a domestic corporation done in this State. If it had been, then the same arguments could have been made against that tax which have been made against this. And yet it is clear that they would not have availed. Whether the tax upon a domestic corporation be called a tax upon a franchise or upon business is wholly unimportant, as the tax is still the same in amount and is imposed by a standard which measures the ability of a corporation to pay, but not necessarily or generally the value of its franchise or the volume or value of its business done in this State.

We find no authority in this act for apportioning the tax upon such a corporation as this according to the amount of dividends earned in this State, or according to the amount of capital stock employed in this State, and hence this defendant, if liable for any of this tax, cannot legally complain of the amount thereof.

It has not been denied that this corporation did business in this State within the meaning of the act, and hence we have been relieved from the necessity of inquiring what is meant by the language " doing business" and " corporate business " in this act. Does it mean occasional or incidental corporate business, or continuous business substantially through the year? Does a corporation that keeps an office in this State merely for the record and transfer of its stock while it does the business for which it was chartered elsewhere, do its corporate business within this State within the meaning of the statute? Does a corporation which has an office in this State from which its officers give some directions for the manage-

ment of its corporate business, all of which is done elsewhere, carry on its corporate business in this State any more than an individual carries on his business in this State who is engaged in the business of building a railroad in another State over which he exercises some control by correspondence from his home here? Does not the statute, when it provides as the measure of the tax the amount of dividends earned by the entire business of the corporation, or the entire cash value of its capital stock, mean by "its corporate business" substantially the whole or the main corporate business which it was chartered to transact? These questions we leave unanswered. Their solution, when properly presented, may relieve this act of some of its features which would seem to be arbitrary, oppressive and unjust.

We have, therefore, reached the conclusion that this judgment should be affirmed.

All concur, except ANDREWS, J., not voting.

Judgment affirmed.