THE PEOPLE OF THE STATE OF NEW YORK ex rel. LEHIGH AND NEW YORK RAILROAD COMPANY, Appellant, *v.* WILLIAM SOHMER, as Comptroller of the State of New York, Respondent.

Tax — railroads — a domestic railroad corporation, which has leased its railroad to a foreign railroad company, but has received no rent and transacted no business except to keep alive its corporate existence by the election of its officers, is not liable for a franchise tax for transacting business.

A domestic railroad corporation purchased at foreclosure sale the property and franchises of another domestic railroad company, whose road was in this state, and thereafter leased the road for a long term of years to a foreign corporation which agreed to

operate it, guaranteed the principal and interest of the bonds issued by the lessor company, as part of the reorganization scheme, and agreed to pay, as rental, the part of the gross income of the leased railroad in excess of the expenses of operating, maintaining and improving it, and the taxes, indebtedness and other expenses of the lessor company, including those of maintaining its corporate existence, and apply the rental to the holders of the stock of the lessor company.   During the year ending October, 1912, the lessor company received no rental or income, declared no dividend, had no bank account, had no place of business in this state, made no investments and did nothing in this state except to keep alive its corporate existence by the election of its officers.   Under these circumstances the lessor company cannot be held to have been doing business in this state during that year, within the meaning of the statute (Tax Law, § 182; Cons. Laws, ch. 60), and hence it is not liable for the payment of a franchise tax therefor.

*People ex rel. Lehigh & N. Y. R. R. Co.* v. *Sohmer*, 169 App. Div. 430, reversed.

(Argued January 12, 1915; decided March 21, 1916.)

Appeal from an order of the Appellate Division of the Supreme Court in the third judicial department, entered October 8, 1915, which dismissed a writ of certiorari and confirmed a determination of the state comptroller assessing a franchise tax against the relator for the year ending October 31, 1913.

The facts, so far as material, are stated in the opinion.

*Edward H. Letchworth* for appellant.   The acts of the relator did not amount to doing business within this state during the year in question.   (*People ex rel. Tower Co.* v. *Wells*, 98 App. Div. 82; 182 N. Y. 553; *Penn Collieries Co.* v. *McKeever*, 183 N. Y. 98; *McCoach* v. *Minehill Ry. Co.*, 228 U. S. 295; *Zonne* v. *Minneapolis Syndicate*, 220 U. S. 187; *People ex rel. W. R. Co.* v. *Williams*, 198 N. Y. 54; *People ex rel. F. A. B. Co.* v. *Williams*, 198 N. Y. 238; *People ex rel. W. & H. S. R. R. Co.* v. *Miller*, 181 N. Y. 328; *People ex rel. H. A. Assn.* v. *Kelsey*, 110 App. Div. 617; 184 N. Y. 573; *People ex*

People ex rel. L. & N. Y. R. R. Co. *v.* Sohmer.    445

1916.]                Opinion, per Collin, J.              [217 N. Y.]

*rel. F. S. Realty Co.* v. *Kelsey,* 110 App. Div. 797; *People ex rel.* C. I. J. *Club* v. *Sohmer,* 155 App. Div. 842; 210 N. Y. 549.) The mere fact that the relator in leasing all of its property and franchises to another corporation is doing only what was contemplated at the time of its organization does not transform its passivity into the doing of business. (*Flint* v. *Stone-Tracy Co.,* 220 U. S. 108; *Zonne* v. *Minneapolis Syndicate,* 220 U. S. 187; *Abrast Realty Co.* v. *Maxwell,* 206 Fed. Rep. 333; *United States* v. *Nipissing Mines Co.,* 206 Fed. Rep. 436; *United States* v. *Emery,* 237 U. S. 28; *Anderson* v. *M. & E. R. Co.,* 216 Fed. Rep. 83; *N. Y. C. R. R. Co.* v. *Gill,* 219 Fed. Rep. 184; *Lewellyn* v. *P. R. R. Co.,* 222 Fed. Rep. 177.)

*Egburt E. Woodbury, Attorney-General (Franklin Kennedy* of counsel), for respondent. The relator was exercising its corporate franchises in doing business in this state for the year in question, and subserved and accomplished the corporate purposes for which it was incorporated; and, therefore, was properly taxed by the comptroller. (*People ex rel. Tetragon Co.* v. *Comptroller,* 162 App. Div. 433; 213 N. Y. 702; *People ex rel. Waclark Realty Co.* v. *Williams,* 198 N. Y. 54; *McCoach* v. *Minehill Ry. Co.,* 228 U. S. 295; *Flint* v. *Stone-Tracy Ry. Co.,* 220 U. S. 108; *People ex rel. C. I. J. Club* v. *Comptroller,* 155 App. Div. 842; 210 N. Y. 549; *New York Terminal Co.* v. *Gaus,* 204 N. Y. 512; *People ex rel. F. A. B. Co.* v. *Williams,* 198 N. Y. 243.)

Collin, J. The proceeding is to review by writ of certiorari the imposition of a tax under section 182 of the Tax Law (Cons. Laws, ch. 60), upon the relator. Section 182, at the time of the imposition, provided: "For the privilege of doing business or exercising its corporate franchises in this state every corporation, joint-stock company or association, doing business in this state, shall

pay to the state treasurer annually, in advance, an annual tax to be computed upon the basis of the amount of its capital stock, employed during the preceding year within this state, and upon each dollar of such amount. The measure of the amount of capital stock employed in this state shall be such a portion of the issued capital stock as the gross assets employed in any business within this state bear to the gross assets wherever employed in business." The statute further declares the basis for stating the amount of the tax in a given case. The tax here was for the year ending October 31, 1913, computed upon the basis of the amount of its capital stock employed the preceding year within this state. The appellant asserts that the tax was unauthorized because it was not " doing business in this state," within the meaning of the statute, during that year.

The appellant was organized August 24, 1895, under section 3 of the former Stock Corporation Law (Laws of 1890, ch. 564, as amd. by ch. 688 of the Laws of 1892). Pursuant to the purposes of its incorporation and statutory authorization, it succeeded, through purchase by a reorganization committee at a mortgage foreclosure sale, to the railroad property and franchises of the Southern Central Railroad Company. Under the reorganization plan $3,803,348 of its authorized capital stock was issued for the property and franchises. The railroad was in the state of New York. The Southern Central Railroad Company, a domestic corporation, was organized under the General Railroad Law (Laws of 1850, ch. 140, and amendatory acts) and had, speaking generally and with sufficient accuracy, the powers, rights and franchises which that law grants, and which by the force of the statute vested in the appellant. (Laws of 1890, ch. 564, § 3.) The appellant, by an indenture dated August 24, 1895, and as the reorganization plan contemplated, leased to the Lehigh Valley Railroad Company all its property, real and personal, and franchises, except the franchise to

be a corporation, for the term of nine hundred and ninety-nine years. The Lehigh Valley Railroad Company was a foreign corporation. It agreed to operate, through the term, at its cost, to the best of its ability, the railroad at advantageous rates to be fixed by it. It guaranteed the payment of the principal and interest of the bonds issued by the appellant. It agreed to pay, as rental, the part of the gross income from operation in excess of all the expenses of operation, maintenance and betterments, the taxes and the bonds, indebtedness and necessary expenses of the appellant, including those of maintaining its corporate existence, and apply, as provided, the rental to the holders of the stock of the appellant. If the gross receipts in any year did not equal the authorized deductions, it might advance the deficiency and deduct in future years the sums advanced, or at its option collect them or surrender the lease. It might sell the property not necessary for the operation of the railroad, and indemnify the appellant against damages and costs arising from any act on its part. The appellant agreed to maintain its corporate existence and, as requested by the lessee, exercise any corporate power enabling the lessee to enjoy the leased property. During the year ending October 31, 1912, it received no rental or income, declared no dividend, had no bank account, had no place of business in this state, made no investments and did nothing in the state except to keep alive its corporate existence — the corporate officers being elected at the annual meeting of the stockholders. The comptroller found and made the final determination now under review, that the appellant's capital stock employed for the year in question was in value $3,803,348 and taxable at the statutory rate.

The appellant is, as has been stated, a domestic corporation. The learned counsel for the respondent asserts that the section 182 obligates it to pay the tax for the privilege of exercising its corporate franchises in this state,

448 People ex rel. L. & N. Y. R. R. Co. *v.* Sohmer.

[217 N. Y.]      Opinion, per Collin, J.      [Mar.,

irrespective of the fact, if it existed, that it was not doing business in the state. He argues that the words " exercising its corporate franchises " are applicable to domestic corporations alone and that the words " of doing business " and " doing business in this state " are applicable to foreign corporations alone. He supports his argument by referring to the language of the section as it was (Laws of 1896, ch. 908; Laws of 1880, ch. 542, § 3; *People v. Equitable Trust Co.,* 96 N. Y. 387; *People ex rel. American Contracting & Dredging Co.* v. *Wemple,* 129 N. Y. 558) prior to the amendment of 1906 (Laws of 1906, ch. 474). The language of the statute, as it has been since 1906, does not warrant the assertion of the respondent. It is, in the particular under consideration, precise, clear and unambiguous. It states plainly and accurately that every corporation doing business in this state shall pay the tax for the privilege of doing business or exercising its corporate franchises. It creates, without dubiety, the liability from the two facts of (a) doing business in the state (b) in a capacity other than individual. The courts have so declared. Judge Werner, after quoting the part in question of the first sentence, said: " The quoted language of this section is unmistakably plain and comprehensive. It includes ' every corporation ' doing business within the state, and distinctly declares that it is a tax ' for the privilege of doing business or exercising corporate franchises in this state.' " (*People ex rel. Interborough R. T. Co.* v. *Sohmer,* 207 N. Y. 270, 274.) Judge Gray said: " Section 182 of the Tax Law imposes an annual franchise tax upon every corporation doing business in this state * * *." (*N. Y. Terminal Co.* v. *Gaus,* 204 N. Y. 512, 514.) Mr. Justice Holmes said: " By the former of these (sections 182 and 184) a tax computed on the basis of its capital stock is levied on every corporation doing business in the state * * *." (*State ex rel. Interborough R. Transit Co.* v. *Sohmer,* 237 U. S. 276, 283.) Mr. Justice Day said in a case involving

a corporation of this state: "The charge  *  *  *  is
upon the doing of business as a corporation of the State
within the State." (*People ex rel. Cornell Steamboat Co.
v. Sohmer*, 235 U. S. 549, 559.) It is only when the lan-
guage of a statute leaves its purpose and intent uncertain
or questionable that rules of construction are invoked.
(*People ex rel. New York Central & H. R. R. R. Co.* v.
*Woodbury*, 208 N. Y. 421.) The statute must be applied
as it speaks.

The appellant was not, within the year in question,
doing business in this state. Its sole activity was to
maintain its corporate existence. In the world of busi-
ness and industry it was merely the depositary of the
naked legal title of the property and franchises which it
had acquired and demised many years prior. In case it
had been an individual it would not be seriously argued,
we think, that the individual was doing business. In
case the appellant were a foreign corporation it would
not be seriously argued, we think, that it was doing
business in this state. The words " doing business in this
state " have one and the same meaning whether applied to
a foreign or domestic corporation. Conditions which do
not constitute liability, in the particular under discus-
sion, on the part of a foreign corporation do not subject a
domestic corporation to the liability. But discussion is
rendered supererogatory by judicial decisions which we
deem well reasoned and conclusive. In *McCoach* v.
*Minehill & Schuylkill Haven Railroad Co.* (228 U. S.
295) the court determined that the defendant was not
doing business within the meaning of the Corporation
Tax Law (Act of August 3, 1909, § 38). The section (38)
provided: "That every corporation  *  *  *  organized
for profit and having a capital stock represented by shares
*  *  *  and engaged in business in any state  *  *  *
shall be subject to pay annually a special excise tax with
respect to the carrying on or doing business by such cor-
poration  *  *  *." The defendant there, a railroad

29

corporation, after operating its railroad for many years, leased it upon terms identical in the determinative features with those of the lease *sub judice*, except the rental was a fixed sum. The court said: "We cannot, however, agree with the contention made in behalf of the Government that because the Minehill Company retains its franchise of corporate existence, maintains its organization, and holds itself ready to exercise its franchise of eminent domain, or other reserved powers, if and when required by the lessee, and ready to resume possession of the property at the expiration of the lease, it is therefore to be treated as doing business, in respect of the railroad, within the meaning of the Corporation Tax Law. As to these matters the case is governed by what was said by the court in *Flint* v. *Stone Tracy Co.* (220 U. S. 107, 145) — ' It is therefore apparent, giving all the words of the statute effect, that the tax is imposed not upon the franchises of the corporation irrespective of their use in business, nor upon the property of the corporation, but upon the doing of corporate or insurance business and with respect to the carrying on thereof.' And again, p. 150,— ' The tax is not payable unless there be a carrying on or doing of business in the designated capacity, and this is made the occasion for the tax, measured by the standard prescribed.'" (See, also, *United States* v. *Whitridge,* 231 U. S. 144; *Lewellyn* v. *Pittsburgh, B. & L. E. R. Co.,* 222 Fed. Rep. 177; *Anderson* v. *Morris & Essex R. Co.,* 216 Fed. Rep. 83; *New York Central & H. R. R. R. Co.* v. *Gill,* 219 Fed. Rep. 184.) The conclusions of the cited cases in respect to the proposition under discussion are not in conflict with those in *People ex rel. Waclark Realty Co.* v. *Williams* (198 N. Y. 54) or *People ex rel. Coney Island Jockey Club* v. *Sohmer* (155 App. Div. 842; affd., 210 N. Y. 549). In the *Waclark* case the tax under review was imposed by virtue of section 182 as it was prior to 1906, whereunder " it was sufficient if the capital stock of the domestic corpora-

tion was employed at all." In the *Jockey Club* case it was held that the club was doing business in this state during the year involved. Although a purpose of the incorporation of the appellant was to acquire the property and franchises of the predecessor company and lease them as it did, the execution of that purpose in 1895 did not constitute doing business in the year ending October 31, 1913. (*United States* v. *Emery, B., T. R. Co.*, 237 U. S. 28; *Zonne* v. *Minneapolis Syndicate*, 220 U. S. 187.) The appellant had the right and power, under its certificate of incorporation and the statutes, to operate the property and franchises it had acquired. It had the power also to lease them regardless of the statement in the certificate that it contemplated doing so. It was and had the powers of a railroad corporation as truly as though it were formed under the General Railroad Law. It could decline to enter into the operation of the railroad and to carry on the business of a railroad corporation. Assuredly its declination or failure to do the business was not "doing business in this state."

The order of the Appellate Division should be reversed, with costs in all courts, and the determination of the comptroller annulled.

SEABURY, J. (dissenting). The tax imposed by section 182 of the Tax Law is imposed upon a corporation "for the privilege of doing business or exercising its corporate franchises in this state." The tax thus imposed has no relation to the special franchises which such a corporation may enjoy. The special franchises are assessed and taxed by a different method. The tax imposed by section 182 is solely upon the privilege of doing business or exercising its general franchise of the right to be a corporation in this state. The law imposes the tax not on the extent of its business but merely upon the exercise of its general franchise in this state. The fact that the appellant has leased its special franchises

and other property to another corporation for a term of 999 years does not relieve it from the obligation to pay a tax upon its general franchise of the right to be a corporation when it does business in this state. Whatever may have been the construction which the federal courts have put upon similar statutes (*McCoach* v. *Minehill & Schuylkill Haven Railroad Co.*, 228 U. S. 295), I think that this court in construing the statute now before us is commit ted to the view that under the circumstances disclosed this corporation is taxable under section 182 of the Tax Law. In *People ex rel. Fifth Ave. Bldg. Co.* v. *Williams* (198 N. Y. 238, 242) it was held that a corporation within this section was taxable although it had earned no dividends and has derived no benefit or advantage from its capital. That case related to a corporation organized for the purpose of buying, selling, leasing, renting and owning real estate. In the opinion of the court in that case Judge WERNER said: "For present purposes it is enough to say that this court is now committed to the doctrine that corporations organized for the purposes of buying, selling, leasing, renting and owning real estate, and of erecting buildings or other structures thereon are taxable under the Tax Law as it now stands. * * * From the moment when the relator began to use its money to purchase real estate for the purposes of its incorporation it employed its capital in this state within the purview of the statute." In *People ex rel. Vandervoort Realty Co.* v. *Glynn* (194 N. Y. 387, at page 390) Judge WILLARD BART-LETT said: "The capital stock of the relator *is employed* rather than invested. It is being used for the precise purpose specified in the certificate of incorporation. * * * The capital stock has been applied to the very use contemplated by the incorporators as the object of the organization. If this is not the employment of the capital stock, then it is impossible to conceive how the capital stock of such a corporation can ever be regarded as being employed at all."

While it is true that the appellant has leased its properties and is merely a holding company, it receives rent for the properties it has leased and it fulfills the purpose for which it was incorporated when it receives such rent and out of it pays its running expenses and dividends to its stockholders. These acts constitute "doing business in this state" within the contemplation of section 182 of the Tax Law. When this corporation was organized it was intended that it should lease all of its property in accordance with the terms of the lease that it afterwards entered into. In making this lease and in receiving the rental therein reserved it fulfills the purpose for which it was organized. In fulfilling this corporate purpose for which it was organized it exercises its corporate franchise in this state and does business within the state within the meaning of section 182 of the Tax Law. The mere fact that the corporation did not operate the railroad does not establish that it was not doing business in this state when it has leased its right to operate the railroad to another corporation and received the rent reserved, in view of the fact that the right to lease its property was one of the corporate purposes for which it was created. I do not think that this interpretation of the statute places domestic corporations in any different situation from foreign corporations in this respect. If a foreign corporation acting within its charter leases its property in this state and receives rent therefor, it would be exercising its franchise and doing business within this state, and, therefore, taxable under section 182 of the Tax Law.

In my judgment the order appealed from should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., CHASE, CUDDEBACK and CARDOZO, JJ., concur with COLLIN, J.; SEABURY, J., reads dissenting opinion, and POUND, J., concurs.

Order reversed, etc.